**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR 3 1 1997 *CK*

DAVID J. MALAND, CLERK

BY
DEPUTY *Carolyn Kelley*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| CHEVRON USA, INC., and | ) |
| CHEVRON CORPORATION, | ) |
| | ) |
| Respondents. | ) |

C.A. No. ~~9:97CV 099~~

JUDGE ~~HANNAH~~
*HEARTFIELD*

## DECLARATION OF A. LEE ROARK
### SPECIAL AGENT, OFFICE OF INSPECTOR GENERAL

I, A. Lee Roark, do state and declare as follows:

1. I am a Special Agent for the Department of the Interior ("Interior" or "Department") Office of Inspector General ("OIG") and am one of the agents assigned to the Inspector General's investigation of Chevron USA, Inc. and Chevron Corporation. This declaration is submitted in support of the United States' Petition for Summary Enforcement of Inspector General subpoenas issued in furtherance of that investigation, and is based on personal knowledge obtained by me in the course of my official duties.

2. The Inspector General of the Department of the Interior has the duty and responsibility to detect and prevent waste, fraud and abuse in Department programs and operations. The management and collection of federal oil and gas royalties is one of the programs/operations of the Department over which the Inspector General has such investigatory and audit responsibility.

000009

2

3. Chevron USA, Inc. and Chevron Corporation are affiliated corporations. Throughout the remainder of this Declaration, I will refer to Chevron USA, Inc. and Chevron Corporation collectively as "Chevron," unless the context dictates otherwise. Chevron is a major producer of oil and gas in the United States and owns numerous oil and gas leases on federal and Indian lands. Under the provisions of those leases, and applicable law and regulations, Chevron is obligated to pay to the United States royalties on the oil and gas produced from those leases.

4. Chevron is required each month to complete and file a report (MMS Form 2014) with the Department's Minerals Management Service ("MMS") concerning its oil and gas production for the preceding month. This report requires Chevron to state the value received for its federal production and the value used for calculating royalty payments.

5. In 1996, the Inspector General, in conjunction with the Department of Justice, began investigating whether Chevron underpaid royalties to the United States on its federal lease production, as part of a broader investigation of royalty payments made by oil and gas companies to the United States since 1986. Specifically, the Inspector General is investigating allegations that Chevron used a variety of schemes and arrangements -- including posted prices, sales to affiliated entities, aggregation of different types and volumes of production, and buy/sell, exchange, and overall balance

- 2 -

agreements -- to misrepresent on its monthly reports to MMS the value of its federal lease production and the amount of royalties owed to the United States. The Inspector General's investigation is independent of any audit or investigation of royalty payments that has been, or is being conducted, by MMS and is designed to detect fraud or abuse by Chevron.

6. In furtherance of the Inspector General's investigation of Chevron, the Inspector General signed subpoenas on November 28, 1996 addressed to Chevron U.S.A, Inc. and Chevron Corporation for records and other documentary evidence. The subpoenas were personally served by Special Agent Gregory J. Johnson on December 4, 1996. True and correct copies of the subpoenas and of the returns of service are attached as Attachment A.

7. The subpoenas seek records that will help the Inspector General, in part, to determine whether Chevron engaged in fraud and abuse by misrepresenting and underpaying royalties owed to the United States for the production of oil and gas on federal and Indian lands. The subpoenas includes twenty-four requests for documents, which fall into two general categories. The first category encompasses documents that will enable the Inspector General to trace the value received by Chevron for oil and gas produced on federal and Indian lands, and primarily includes: (a) contracts or other documents describing arrangements by Chevron for the purchase, sale or transfer of oil and gas on federal leases; (b) financial statements, account

000011

ledgers and other documents summarizing Chevron's production, purchase, sale, or transfer of oil and gas on federal leases; and, (c) correspondence or other documents discussing differences in location or quality differentials, or the use of posted prices, futures contracts or other hedging mechanisms, in connection with the purchase, sale, or transfer of oil and gas on federal leases.

The second category of documents sought by the subpoenas relates to the policies, procedures, and methodologies used by Chevron to value and calculate royalty payments on oil and gas produced on federal lands, and primarily includes: (a) handbooks, manuals or other documents describing Chevron's procedures for valuing and calculating royalty payments on federal oil and gas production; (b) handbooks, manuals or other documents discussing the determination and issuance of posted prices, and the relationship of such posted prices to the value of oil and gas produced on federal leases; (c) handbooks, manuals or other documents discussing methods other than posted prices for valuing oil and gas produced on federal leases; and, (d) correspondence, reports, or other documents discussing whether Chevron has properly calculated oil and gas royalties owed to the United States.

8.    The subpoenas required Chevron to produce the documents by December 23, 1996.  On December 16, 1996, I participated in a telephone conference with counsel for the Government and Chevron to discuss Chevron's compliance with the

- 4 -

000012

subpoenas. Chevron asserted that producing the requested information would be burdensome and expressed concern that the Inspector General subpoenas appeared to be seeking documents previously provided to MMS. The parties eventually agreed that Chevron would give priority to oil-related documents and could produce documents in stages. It was further agreed that, during the first stage of production, Chevron would provide to the Government (i) a Chart of Accounts, (ii) memos relating to the use of posted prices for valuation determinations, (iii) materials previously produced in connection with MMS's investigation of royalty payments in California, and (iv) a list of contracts pertaining to Chevron's federal oil leases. Chevron expressed concern about the need for a confidentiality agreement before producing these materials, and advised that it would prepare and provide the Government with a draft agreement.

9. On January 31, 1997, the parties met, through counsel, to discuss further Chevron's compliance with the subpoenas. I participated in the meeting by speaker phone. The Government advised that it had not received any documents from Chevron and inquired whether Chevron intended to comply. Chevron claimed that it wanted to comply but again complained about the scope of the subpoenas. The Government reiterated its proposal that Chevron give priority to oil-related documents and that it produce documents in stages. The Government requested that Chevron produce initially the documents that it offered to provide during the December 16 telephone conference, and agreed

000013

to work with Chevron to develop a plan for the production and review of sample leases and lease-related documents during subsequent stages of production. Chevron informed the Government that it would begin producing documents after a protective agreement was in place, and reiterated its promise to send the Government a draft agreement. I am informed that Government counsel provided a draft protective agreement to Chevron at the end of the meeting and advised Chevron that the Government could not agree to substantive alterations to the draft.

10. I am advised that on February 17, 1997, counsel for Chevron faxed to Government counsel a proposed Confidentiality and Protective Agreement. The proposed Agreement, in part, prohibited any documents from being disclosed to other government law enforcement agencies without Chevron's consent; prohibited any documents from being disclosed to Congress unless Congress agreed to abide by the terms of the Agreement; prohibited any documents from being disclosed in response to a FOIA request; provided that all documents would remain in Chevron's custody and control; and required that Chevron be notified monthly of all persons having access to any of the documents. These and other terms of the proposed Agreement would have interfered with the Government's ability to conduct its investigation by unduly limiting its access to and use of the subpoenaed information.

11. I am advised that on February 27 and March 6, 1997, the Government informed Chevron that the proposed Agreement

000014

was unacceptable and suggested possible revisions. However, a subsequent draft provided by Chevron on March 7, 1997 contained the same unacceptable provisions previously rejected by Government counsel.

12. To date, Chevron has not produced any documents in response to the subpoenas.

13. Although Chevron has asserted that some of the documents requested by the subpoenas were previously made available to MMS, Chevron has failed to specify the particular areas, if any, of overlap. Moreover, because MMS did not copy many of the documents previously made available to them by Chevron, the requested documents cannot be obtained from MMS.

14. The Inspector General needs to review the records sought in the subpoenas to investigate the allegations of fraud and abuse it has received concerning Chevron's payment of royalties. These records will assist the Inspector General in tracing the value Chevron has received for oil and gas produced on federal lands and in determining whether Chevron misrepresented and underpaid royalties owed on that production.

000015

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _20_ day of _MArch_, 1997, at _____ _Lakewood_____, Colorado.

A. Lee Roark
Special Agent, Office of the
    Inspector General
Department of the Interior

000016

ATTACHMENT A

000017

00828

# United States of America
# U.S. Department of the Interior
# Office of Inspector General

### SUBPOENA DUCES TECUM

575 Market St., Rm 3828

TO: Chevron Corporation, ~~225 Bush Street~~, San Francisco, California  94104-4207

Attention: Kenneth T. Derr, CEO

Pursuant to the provisions of Section 6(a)(4) of the Inspector General Act of 1978, Pub. L 95-452 (5 U.S.C. App. ),

you are hereby commanded to produce before  Special Agent A. Lee Roark

an official of the Office of Inspector General, at  134 Union Blvd., Suite 540,

Lakewood, Colorado  80228, (303) 236-8296,

on the  23rd  day of  December  , 19 96  , at  3:00  o'clock  P. m. of that day,

the following  information, documents, reports, answers, records, accounts, papers and other data and documen-

tary evidence:  See Attachment.

IN TESTIMONY WHEREOF,  the  Inspector General  of  the
U.S. Department of the Interior  has  hereunto  set  his  hand  at
~~Washington, DC~~ St. Thomas, U.S. Virgin Islands this  28th  day
of November  , 19  96

Inspector General

Note: Failure to comply with this subpoena could result in a legal proceeding against you in which a court order com-
pelling compliance will be sought. See Privacy Act notice on other side.

IGM-530 (IGM-48

# United States of America
# U.S. Department of the Interior
# Office of Inspector General

### SUBPOENA DUCES TECUM

Rm 3828

TO: Chevron USA, Inc., 575 Market Street, San Francisco, California  94105-2823

Attention: R. E. Galvin, President

Pursuant to the provisions of Section 6(a)(4) of the Inspector General Act of 1978, Pub. L 95-452 (5 U.S.C. App. ),

you are hereby commanded to produce before  Special Agent A. Lee Roark

an official of the Office of Inspector General, at  134 Union Blvd., Suite 540,

Lakewood, Colorado  80228, (303) 236-8296.

on the  23rd  day of  December , 19 96 , at  3:00  o'clock  P. m. of that day,

the following  information, documents, reports, answers, records, accounts, papers and other data and documen-

tary evidence:  See Attachment.

IN TESTIMONY WHEREOF,  the  Inspector General, of  the
U.S. Department of the Interior  has  hereunto  set  his  hand  at
~~Washington, DC~~ St. Thomas, U.S. Virgin Islands  this  28th  day
of  November , 19 96 .

_____
Inspector General

Note: Failure to comply with this subpoena could result in a legal proceeding against you in which a court order com-
pelling compliance will be sought. See Privacy Act notice on other side.

IGM-530-1 (Rev. 5-85)

**PRIVACY ACT NOTICE.** Pursuant to the Privacy Act of 1974; 5 U.S.C. 552a, you are advised of the following:

1. **Authority for Solicitation of Information.** The Inspector General Act of 1978, Pub. L. 95-452 (5 U.S.C. App. ) authorizes the DOI Inspector General to issue subpoenas necessary in the performance of audits and investigations of the programs and operations of DOI. Disclosure of the information specified in this subpoena is mandatory, subject to the valid assertion of a legal right or privilege.

2. **Principal Purpose for Solicitation of Information.** The Inspector General's principal purpose in soliciting the information is to promote economy, efficiency, and effectiveness in the administration of the programs and operations of DOI and to prevent and detect fraud, abuse, or mismanagement in such programs and operations.

3. **Routine Uses of the Solicited Information.** The routine uses of the solicited information are published in Volume 48 of the Federal Register, page 37536, August 18, 1983.

4. **Effect of Noncompliance.** Failure to comply with this subpoena may result in the Inspector General requesting a court order for compliance. If such an order is obtained and you thereafter fail to supply the information, you may be subject to civil and/or criminal sanctions for contempt of court.

### CERTIFICATE OF SERVICE

*USA*
*Chevron Corporation*
*~~325 Bush St~~ 575 Market St*
*San Francisco, CA 94104*

I HEREBY CERTIFY that on _December 4,_ , 19 _96_ , at _San Francisco, CA 94104_

I personally served this subpoena upon _Chevron ~~USA~~ Corporation_ by handing to and _____

leaving with _Anthony J. Knaapen_ a true and correct copy thereof.

_Gregory L. Johnson_
**(Signature)**

_SPECIAL AGENT_             _December 4,_ , 19 _96_
**(Title)**                 **(Date)**


### ADMISSION OF SERVICE

I HEREBY ADMIT SERVICE of this subpoena on behalf of _CHEVRON ~~USA~~ CORPORATION_

and acknowledge receipt of a true and correct copy thereof on this date.

_Anthony J. Knaapen_
**(Signature)**

_Supervisor Legal Process_        _12/4_ , 19 _96_
**(Title)**                       **(Date)**


000021